UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL NO. 18CR00188 |
| | : | |
| v. | : | |
| | : | |
| NICHOLAS STENGEL, | : | SENT: 10/23/18 |
| Defendant. | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following memorandum to assist the Court in issuing an appropriate sentence in this case. For the reasons set forth herein, the government recommends that the Court accept the proposed plea agreement pursuant to Rule 11(c)(1)(C) and sentence the defendant to 15 years of incarceration. The government further recommends that the Court sentence the defendant to 20 years of supervised release, with the conditions recommended by the United States Office of Probation, including that the defendant undergo intensive sex offender treatment, the defendant's computer and internet usage be limited and monitored, and the defendant's direct contact with minors be limited and supervised. The defendant is required by statute to register as a sex offender for a minimum period of 25 years.

**I.      BACKGROUND**

On July 17, 2018, the defendant pled guilty to one count of Receipt of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2), and one count of Laundering of Monetary Instruments, in violation of 18 U.S.C. § 1956(a)(2)(A). During the plea hearing, the defendant admitted the following facts, as set forth in the written Statement of Offense, to be true.

**A.  The Website**

Beginning in September 2017, law enforcement initiated a large scale investigation into a

Tor based child pornography website, hereinafter referred to as "The Website."[1] Tor is a computer network designed to facilitate anonymous communication over the Internet. The Tor network does this by routing a user's communications through a globally distributed network of relay computers, or proxies, rendering conventional Internet Protocol ("IP") address-based methods of identifying users ineffective. To access the Tor network, a user must install Tor software either by downloading an add-on to the user's web browser or by downloading the free "Tor browser bundle." When a Tor user accesses a website, only the IP address of the last relay computer (the "exit node"), as opposed to the user's actual IP address, appears on the website's IP address log. Currently, there is no practical method to trace a user's actual IP address back through those Tor relay computers. The Tor Network also makes it possible for users to operate websites, called "hidden services," in a manner that conceals the true IP address of the computer hosting the website.

The Website operated as a hidden service on the Tor network until March of 2018. The Website was used to host and distribute video files depicting child pornography that could be downloaded by site users. In fact, the upload page on The Website clearly states: "Do not upload adult porn." Any user could create a free account on The Website by creating a username and password. Only after the user registered an account could the user browse previews of videos available for download and post text to The Website. To download videos from the site, users must use "points," which are allocated to users by The Website. A registered user could earn points from The Website in several ways: (1) uploading videos depicting the sexual exploitation of children; (2)

---

[1] The actual name of "The Website" is known to law enforcement. The disclosure of the name of The Website would potentially alert its users to the fact that law enforcement action is being taken against users of The Website, thereby provoking users to notify other users of law enforcement action, flee, and/or destroy evidence. Accordingly, to protect the confidentiality and integrity of the ongoing investigation involved in this matter, specific names and other identifying factors have been replaced with generic terms and the website will be identified herein as "The Website."

referring new users to The Website; (3) paying for a "VIP" account, which lasted for six months, entitled a user to unlimited downloads, and was priced at 0.03 Bitcoin (approximately $327.60 USD as of March 1, 2018); or (4) paying for points incrementally.[2]

As of February 8, 2018, The Website had over 125,000 unique videos available for downloading. In order to prevent duplicate videos from being uploaded, The Website provided a digital hash-value check in order for the user to compare his or her video to other videos previously uploaded to the site. The Website did not allow a user to upload a video whose hash value matched something previously uploaded to the site. According to law enforcement's viewing of The Website as of February 8, 2018, the videos stored on The Website amounted to over seven terabytes of data. As of February 8, 2018, The Website indicated on its download page details that its users had downloaded files from The Website more than one million times.

B. **Defendant's Laundering of BTC to Promote Specified Unlawful Activity**

Law enforcement identified the defendant's BTC account number, created on October 21, 2016, as having made at least 10 payments to The Website. Notably, between October 24, 2016 and July 13, 2017, the defendant transmitted 0.3801 BTC, worth approximately $376.97, over at least six transactions to The Website. For example, on or about October 24, 2016, the defendant transmitted 0.1305 BTC from a location in Washington, D.C. to a BTC wallet associated with The

---

[2] Bitcoin ("BTC") is a type of virtual currency, circulated over the internet. BTC are not issued by any government, bank, or company, but rather are controlled through computer software operating via a decentralized, peer-to-peer network. BTC is just one of many varieties of virtual currency. To acquire BTC, a typical user purchases them from a BTC virtual currency exchange. A virtual currency exchange is a business that allows customers to trade virtual currencies for other forms of value, such as conventional fiat money (e.g., U.S. dollars, Russian rubles, euros). Exchanges can be brick-and-mortar businesses (exchanging traditional payment methods and virtual currencies) or online businesses (exchanging electronically transferred money and virtual currencies). Virtual currency exchanges doing business in the United States are regulated under the Bank Secrecy Act and must collect identifying information about their customers and verify their clients' identities. It was through this "know your customer" policy that law enforcement were able to identify the defendant's BTC account number associated with payments to The Website.

Website, which was in South Korea.

Law enforcement's review of the forensic image of the electronic storage devices that had hosted The Website revealed that between April 4, 2017 and October 6, 2017 (186 day sample), the defendant's username on The Website, PANZA73, downloaded 2,686 videos from The Website. Examples of the video descriptions downloaded from The Website include, "9y babe getting fuck in the pussy," "2 Girls 9yo masturbation," "Girl 10yo fun and the end suck dad," "5yo playing her vagina with her mom licking and masturbating," and "13 year old small girl takes a makeup brush both in ass and pussy." The combined length of time for the videos downloaded by the defendant from The Website during this limited time-frame is approximately 455,018.53 hours and consists of 163,909,873,126 bytes of data.

### C. Defendant's Electronic Devices

On March 15, 2018, law enforcement applied for a search warrant to search the defendant's residence and place of employment in Washington, D.C., and to forensically analyze digital devices seized as a result of the information learned from the The Website's servers.

On March 22, 2018 at approximately 6:05 am, law enforcement executed the search warrant at the defendant's residence located in Washington, D.C. Law enforcement announced "police" and "warrant" while at the defendant's front door. After a short period of time, the defendant's wife complied with law enforcement's requests and opened the door. Law enforcement called for the defendant to appear, and reiterated "police" and "warrant," however the defendant failed to comply with the requests. Law enforcement proceeded through the residence in order to locate the defendant, who was subsequently located in the bathroom, standing in the bathtub, holding a knife. The defendant was ordered to drop the knife and he complied. Law enforcement immediately observed that the defendant had multiple deep lacerations to both of his wrists and his neck and observed that he had lost a lot of blood. The defendant was assisted out into the living room so he

could receive immediate medical aid.

As law enforcement was treating the defendant's wounds, he spontaneously stated "for your search, look there and there," while pointing to a laptop and a messenger bag in the living room. Law enforcement clarified that the defendant was pointing to the Asus laptop and messenger bag, and he replied yes. The defendant was subsequently transported to George Washington Hospital for life-saving medical treatment.

At the defendant's residence, law enforcement seized an Asus laptop with S/N/ FBN0CJ04807146g, a Toshiba hard-drive with serial number 25LBTIZVTPDC, a Western Digital hard-drive with S/N WCAZA0085789T, and a Quantum Fireball 20.4 gigabyte hard-drive with S/N 041RRT-12545-0C4-15WN, Nexus Tablet with S/N K008DAOKBC118683, and Acer Laptop with S/N LXRMU0209513236D0A1601, among other items. While on site, a Computer Forensic Analyst (CFA) with HSI performed a preliminary forensic preview of some of the electronic devices. The CFA identified child pornography files on the Asus laptop, the Toshiba hard-drive, and the Quantum Fireball 20.4 gigabyte hard-drive. The Toshiba hard-drive was located in the messenger bag that the defendant had identified as belonging to him to law enforcement. The defendant's wife also identified that this messenger bag belonged to the defendant.

Law enforcement subsequently performed a more in-depth forensic analysis of the Asus laptop and Toshiba hard-drive. Located on both the Toshiba hard-drive and Asus laptop were links to the defendant's username on The Website of "PANZA73." Law enforcement identified more than 6,000 videos and 600,000 images depicting child pornography located on the Toshiba hard-drive. An example of the depictions located on the hard-drive includes a file folder entitled "YFCU" containing a series of images of a child, who appears approximately five years old, laying on a bed with her vagina exposed and the final image depicting the same child's vagina being penetrated by an adult penis. Law enforcement identified more than 100 videos and 5,000 images depicting child

pornography on the Asus laptop. In addition, law enforcement identified on the Asus laptop the TOR software, which is used to access The Website. Examples of videos and images located on the Asus laptop include the following:

- A video titled IMG_0199 mov: This video shows a pre-pubescent girl, naked from the waist down and laying on a bed in what appears to be a young girl's bedroom based on the décor of the room. Her legs are spread apart and she is inserting an object into her anus and rubbing it against her vagina. Thereafter, she inserts the object into her mouth. This video was produced by an individual, located in Texas, of his (approximately) 9-year-old adoptive daughter. This individual uploaded this video to several Tor websites, including The Website. Law enforcement identified the individual who produced and uploaded this video, and he admitted to producing these videos of his daughter and uploading them to various sites, including The Website.

- Image titled X_3BCA3408.JPEG: This image depicts a girl, approximately 8 years old, with her legs bound by rope at the ankles and spread over her head with her vaginal area exposed and the focal point of the depiction.

- A video titled 2018_02-22-13-50-44 mp4: This video depicts a child, approximately 3-4 years old, laying naked on a bed and touching her exposed vagina.

- A video titled "Al&boy.mp4:" This video shows a prepubescent male child, approximately eight years old, and a prepubescent female child, approximately six years old, engaged in sexual activities with each other. The female child is seen performing fellatio on the male child and the male child is seen engaging in vaginal intercourse with the female child.

- A video titled "beavs-girl-05.mp4:" The video shows a prepubescent female child, approximately five years old, sitting on a bed with her legs spread and her vagina exposed and the focal point of the depiction. An adult male is seen masturbating and subsequently ejaculating onto the child's vagina.

D. **Defendant's Prior Conviction**

On February 24, 2003, the defendant pled guilty in the United States District Court for the District of Columbia for violations of 18 U.S.C. §§ 2252A(a)(2) and 2256(8)(A) (Certain Activities Relating to Material Constituting or Containing Child Pornography).

6

## II. SENTENCING CALCULATION

### A. Statutory Penalties

The charge of Receipt of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2) carries a maximum sentence of 20 years of imprisonment and a term of imprisonment not less than 5 years pursuant to 18 U.S.C. § 2252(b)(1), a fine of not more than $250,000 or twice the pecuniary gain or loss pursuant to 18 U.S.C. § 3571(d), an order of restitution, and an obligation to pay any applicable interest or penalties on fines or restitution not timely made, and a period of supervised release – after any period of incarceration – of not less than five years or life pursuant to 18 U.S.C. § 3583(k). However, pursuant to 18 U.S.C. § 2252(b)(1), if such person has a prior conviction under certain enumerated chapters and statutes, including Chapter 110 (Sexual Exploitation of Children), such person shall be fined and imprisoned for not less than 15 years nor more than 40 years. In addition, there is a mandatory special assessment for each felony conviction pursuant to 18 U.S.C. § 3013(a)(2)(A).

The charge of Laundering of Monetary Instruments, in violation 18 U.S.C. § 1956(a)(2)(A), carries a maximum sentence of 20 years imprisonment, a fine of not more than $500,000, or a fine of twice the value of the property involved in the transaction, pursuant to 18 U.S.C. § 1956(a)(1), and a term of supervised release of not more than three years, pursuant to 18 U.S.C. § 3583(b)(2).

Pursuant to 42 U.S.C. § 16911(3)(B), the defendant will be considered a Tier II sex offender for purposes of the Sex Offender Registration and Notification Act "SORNA." Pursuant to 42 U.S.C. § 16015(a)(2), as a Tier II sex offender, the defendant will be required to register as a sex offender for 25 years. The defendant will also be subject to local and state registration requirements.

B.     **Guidelines Range**

The Presentence Investigation Report ("PSR") sets forth the correct calculation of the defendant's Guidelines range. The Guideline for Count One, Receipt of Child Pornography, is U.S.S.G. § 2G2.2. The Guideline for Count Two, Laundering of Monetary Instruments, is U.S.S.G. § 2S1.1  The Counts are grouped for guideline calculation purposes pursuant to U.S.S.G. § 3D1.2(c). PSR ¶ 60.

The base offense level for Receipt of Child Pornography is 22. The following Specific Offense Characteristics apply: (a) a two level decrease because the defendant's conduct was limited to the receipt of child pornography; (b) a two level increase because the material involved a prepubescent minor under the age of 12; (c) a four level increase because the offense involved material that portrayed sadistic or masochistic conduct; (d) a two level increase because the offense involved the use of a computer; (e) a five level increase for the offense involving 600 images or more of child pornography. PSR ¶ 61. Accordingly, the base offense level is 33. PSR ¶ 61.

Because the defendant was convicted under 18 U.S.C. § 1956, two levels are added to the offense level. PSR ¶ 62. Two additional levels are added because the offense involved sophisticated laundering. PSR ¶ 63.  Accordingly, the adjusted offense level is 37. PSR ¶ 68.

The defendant is entitled to a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). PSR ¶ 69. The government hereby moves to decrease the defendant's offense level by an additional level pursuant to § 3E1.1(b) because he timely notified the authorities of his intention to enter a guilty plea and thus permitted the government and the Court to preserve resources. PSR ¶ 70. As a result, as set forth in the plea agreement, the defendant's total offense level is 34.  PSR ¶ 71.

The defendant has a prior criminal conviction for Certain Activities Relating to Material

Constituting or Containing Child Pornography from November 2003. Accordingly, the defendant has three criminal history points and is a Criminal History Category II. PSR ¶ 72-74. With a total offense level of 34 and a Criminal History Category of II, the defendant's sentencing range of imprisonment is 168 to 210 months of incarceration. PSR ¶ 139. Due to the defendant's prior sex offense conviction, the mandatory minimum term of imprisonment is 180 months (15 years). PSR ¶ 137.

### III.     GOVERNMENT'S RECOMMENDATION

#### A.     Application of the Federal Sentencing Guidelines

In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1). Booker, 125 S. Ct. at 756.

In post-Booker cases, the Supreme Court has stated that a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. See United States v. Gall, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."). After giving both parties an opportunity to argue for an appropriate sentence, the district court should then consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). Id. These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and

to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the kinds of sentences available (18 U.S.C. § 3553(a)(3)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); the need to avoid unwarranted sentencing disparities (18 U.S.C. § 3553(a)(6)); and the need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

Notably, the United States Sentencing Commission conducted a hearing on the child pornography sentencing guidelines on February 15, 2012.  Department of Justice (DOJ) employees James Fottrell and Steve DeBrota, and former DOJ employee Francey Hakes provided the following testimony regarding child pornography offenses:

> In the last ten years, we have seen a sharp increase in the severity and depravity of child pornography offenses, fueled in large part by swiftly advancing technological changes which permit offenders to easily store large numbers of images of child sexual abuse, to create safe havens online where they can communicate and bond with other individuals who encourage and promote the sexual exploitation of children, and to utilize sophisticated methods to evade detection by law enforcement.  This increase is reflected in the changes in the content of the images over time, as infants and toddlers are now regularly victimized by child pornography offenders and the victims are forced into more brutal and degrading sexual activity.

See   http://www.justice.gov/criminal/ceos/CT/downloads/Testimony-Sentencing-Commission-Fottrell.pdf.

On February 27, 2013, the Sentencing Commission released a report concerning the Guidelines for child pornography offenses ("The CP Report").  The CP Report contained numerous observations that are relevant to a sentencing judge.  The CP Report recognized that child pornography offenses inherently involve the sexual abuse and exploitation of children, that child pornography victims are specifically harmed by the distribution of their images over the Internet, and that many victims suffer lifelong harm at knowing that their images are being used by offenders for sexual gratification.  The CP Report emphasized the growing problem of online child pornography communities that facilitate and validate child sexual exploitation.  The CP

Report also identified many problems with the non-production child pornography Guidelines and included recommendations about how to change the Guidelines to better account for offender behavior, including through the elimination of some specific offense characteristics and the revision and addition of other enhancements.

Although the Commission has asked Congress for permission to revise the child pornography Guidelines, no changes have been made at this time. The CP Report did not suggest that courts should ignore the current Guidelines, but instead provided a framework of factors to consider under the statute. These factors should be considered in conjunction with– not instead of – the existing Guidelines. Unless and until Congress signals its intent to permit changes to the Guidelines, a sentencing court should determine a defendant's Guidelines range based on the current Guidelines. A sentencing court should then consider the CP Report as part of its analysis of the statutory factors.

      **B.**      **Basis for the Government's Recommendation**

The government submits that the agreed-upon sentence of 15 years (180 months) of incarceration is appropriate and warranted in this case and specifically recommends a period of supervised release of 20 years (240 months) based on the factors in 18 U.S.C. § 3553(a). The recommended sentence is sufficient, but not greater than necessary, to accomplish the purposes of sentencing.

      **1.**      **Nature and Circumstances of the Offense**

As set forth above, the defendant amassed a comprehensive collection of child pornography, and was clearly interested in, and collected, many of the types of material described in the Justice Department testimony. Specifically, a forensic examination of the defendant's devices revealed that he had possessed over 6,000 videos and 600,000 images of child pornography – an incredibly large amount of child pornography, which was fueled by the defendant's nefarious

activities on The Website.  Notably, between October 24, 2016 and July 13, 2017, the defendant transmitted 0.3801 BTC, worth approximately $376.97, over at least six transactions to The Website.  Believing that his purchases of various videos of child pornography from the dark-net were anonymous, the defendant subsequently downloaded 2,686 videos depicting child pornography from The Website.  Examples of the video descriptions the defendant downloaded from The Website shows an individual with a specific interest in viewing the sexual abuse of pre-pubescent children (for example, "9y babe geting fuck in the pussy," "Girl 10yo fun and the end suck dad," and "5yo playing her vagina with her mom licking and masturbating.")

It goes without saying that child pornography causes real and lasting harm in our society.  It is not just about images and videos; it is about real children who are at best being treated as sexualized objects and at worst being horrifically and repeatedly sexually abused.  The abuse of child pornography victims does not end when the physical contact or production of these images or videos by the initial offender is over.  The abuse and harm go on as long as those images and videos are viewed, traded, collected, and used by other offenders for their sexual gratification.

This harm cannot be overstated.  Particularly in the Internet age, victims of child pornography must attempt to cope with the knowledge that the worst moments of their young lives are forever memorialized and available to child pornography consumers.  Individuals – like the defendant – who receive, seek, view, keep, and use child pornography for their own sexual gratification are part of the illicit market for child pornography, which continually re-victimizes the children in already-existing images and videos.  As the Supreme Court recognized in the seminal case of New York v. Ferber:

> The use of children as subjects of pornographic materials is very harmful to both the children and the society as a whole.  It has been found that sexually exploited children are unable to develop healthy relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers as adults.

> Pornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place.

458 U.S. 747, 758-60 nn. 9 & 10 (1982). The Court continued, "[a] child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography. . . . It is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotion repercussions." Id. at 759 n.10.

In Paroline v. United States, the Supreme Court discussed the harms caused by child pornography traffickers in the context of restitution for victims of child exploitation:

> Child pornography possessors are jointly liable under this standard, for they act in concert as part of a global network of possessors, distributors, and producers who pursue the common purpose of trafficking in images of child sexual abuse. As Congress itself recognized, "possessors of such material" are an integral part of the "market for the sexual exploitative use of children." […] Moreover, although possessors like Paroline may not be familiar with every last participant in the market for child sexual abuse images, there is little doubt that they act with knowledge of the inevitable harms caused by their combined conduct. Paroline himself admitted to possessing between 150 and 300 images of minors engaged in sexually explicit conduct, which he downloaded from other offenders on the Internet. […] By communally browsing and downloading Internet child pornography, offenders like Paroline "fuel the process" that allows the industry to flourish. […] Indeed, one expert describes Internet child pornography networks as "an example of a complex criminal conspiracy," […]—the quintessential concerted action to which joint and several liability attaches.

Paroline v. United States, 134 S. Ct. 1710, 1741 (2014) (citations omitted).

Victims must cope, every day, with wondering whether someone they have come in contact with has seen the pictures or videos of their abuse. They are revictimized – continuously exploited – by each consumer of child pornography. The defendant here participated in and fueled this exploitative industry for a substantial period of time, as evident by his extensive collection of child pornography. The videos and images the defendant obtained and consumed perpetrated severe harm on the children depicted therein each and every time he viewed and purchased these images.

## 2. History and Characteristics of the Defendant

In most criminal cases, a defendant will appear for sentencing and offer mitigating evidence, asking the Court to consider the defendant's sometimes less obvious, but positive attributes. In child exploitation crimes, however, a defendant's good qualities are frequently the easiest to see. Defendants appear to be like any other law-abiding citizen—they work, worship, and have the support of their families. Their crimes against children, and the reasons they commit them, have been hidden from colleagues, friends, and loved ones. Despite that fact, the perpetrator's private crime is a horrific one, and offenders must be held accountable for the damage they have done.

Here, the defendant already has a criminal conviction for this exact offense. On February 24, 2003, the defendant pled guilty in the District Court for the District of Columbia to violating 18 U.S.C. §§ 2252A(a)(2) and 2256(8)(A), Certain Activities Relating to Material Constituting or Containing Child Pornography. In the defendant's prior case, the Federal Bureau of Investigation estimated that there were more than 79,335 images and 230 video files depicting minors engaged in various sex acts located on the defendant's electronic devices. These numbers increased exponentially with the instant offense.

The defendant was sentenced to 41 months and 36 months of supervised release. While on supervised release, the defendant admitted to seeking out child pornography at the public library. As a result, the Court ordered increased treatment appointments and testing. Ultimately, the defendant's supervised release term was closed satisfactorily on December 4, 2009. However, a few years later, when the defendant found himself allegedly facing a debilitating work obstacle, he again resorted to his criminal behaviors. This time, in an effort to conceal his on-line activities, the defendant sought out The Website and downloaded 163,909,873,126 bytes of data of child pornography.

Accordingly, based on the defendant's behavior while on his previous period of supervised release, and the defendant's escalating behavior once off supervised monitoring, the government believes that an extensive time of supervised release with intensive sex offender treatment and monitoring conditions are warranted in this case.

### 3. **Punishment, Deterrence, Protection, and Correction**

A sentencing court "shall impose a sentenced sufficient, but not greater than necessary" to comply with the need for a sentence: "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The government's recommended sentence is sufficient, but not greater than necessary, to provide just punishment for the defendant's offenses. The defendant's purchase and possession of child pornography harms society at large and specifically, the child victims, and thus warrants a sentence of imprisonment. Moreover, a term of supervised release – with conditions including sex offender assessment and treatment – is important to ensuring that the defendant receives the continuing treatment and support that will ensure he does not commit any additional crimes in the future.

### 4. **Available Sentences And Supervised Release Conditions**

The defendant should be sentenced to a term of incarceration. The defendant is in Zone D of the Guidelines, and thus a probationary sentence would be a departure from the Guidelines. PSR ¶ 158. According to the PSR, the defendant does not have the ability to pay a fine in this case. PSR ¶ 136.

In addition, the Court should impose a term of supervised release, and the government

recommends a term of 20 years (240 months). This term of supervised release is double the supervised release period of the defendant's initial sentence. However, a lengthy term of supervised release is critical because it will subject the defendant to ongoing monitoring and sex offender treatment and ensure that the defendant does not revert back to his criminal conduct when he finds himself facing a life challenge or obstacle.

The conditions of supervised release should include the following conditions, which are conditions imposed in similar cases and conditions that are recommended by the United States Probation Department:

(1) The defendant must register as a sex offender and submit to searches of his person, property, house, residence, vehicle, papers, computers, other electronic communications or data storage devices or media, and effects, at any time, with or without a warrant, by law enforcement or probation officer with reasonable suspicion concerning unlawful conduct or a violation of a condition of supervision.

(2) The defendant must undergo and comply with sex offender evaluation and treatment. This may include the use of polygraph testing as part of the therapeutic process.

(3) The defendant's use of the Internet, computers, and any other Internet-capable devices will be restricted and monitored.

(4) The defendant will not have direct contact with minors without the written approval of probation. This also entails both an employment/volunteer restriction and residential restriction, in that the defendant shall not be employed in any capacity, or participate in any volunteer activity, which may cause him to come in direct and/or unsupervised contact with children for more than momentary duration without advanced approval by the United States Probation Office, and the defendant shall have all residences pre-approved by the United States Probation Office. Specifically, the defendant shall not

live in a residence where minor children also reside without the permission of the United States Probation Office.

As it relates to the above conditions, first, the defendant will be required by statute to register as a sex offender as a result of his convictions in this case – and that period of registration will be at least 25 years.  Second, the defendant's crimes stem from his online activities and warrants monitoring of his electronic devices and Internet activities.  Third, the defendant's interest in the exploitation of children justifies monitoring his direct contact with any minors and supports the imposition of sex offender evaluation and treatment.

### 5. Avoiding Unwarranted Sentencing Disparity

One of the statutory factors to consider at sentencing is the need to avoid unwarranted disparity.  Indeed, avoiding such uncertainty and disparity was one of the purposes for the creation of the Sentencing Guidelines.  Notably, however, the sentences for child pornography offenses vary widely. The factors that typically result in courts imposing sentences within or closer to the sentencing guideline range include cases in which there is indicia of a sexual interest in children or "hands on" abuse of children, cases where the defendant has a criminal history, and cases where there are other indicia that the defendant is not likely to be susceptible to rehabilitative efforts. Cases in which courts vary significantly downward from the guidelines tend to include those where the conduct is isolated and unaccompanied by other indicia of a likelihood of "hands on" abuse or other criminal activity, the defendant has no criminal history, the defendant provided significant cooperation, or of his own initiative, engaged in significant efforts and/or rehabilitation in advance of any order by the court to do so.

Here, the government acknowledges that there is no indicia of "hands on" abuse of children, but the defendant does have a criminal history of engaging in this precise conduct.  Moreover, the defendant's current conduct involves possessing an extensive collections of child pornography and

using a sophisticated website to avoid detection. However, as mitigating factors, the defendant indicated early on that he accepted responsibility and wished to plead guilty. He acknowledged his criminal responsibility and expressed remorse in his statements to the probation officer. PSR ¶ 57. The defendant is currently 45 years old and will be 60 years old upon his release from imprisonment; he will be 80 years old when his supervised release term expires. Accordingly, the government's recommendation, a within guideline sentence, is appropriate based on the unique factors presented in this case.

### 6. *Restitution and Victim Impact Statements for the Victims*

None of the identified victims have requested restitution or provided a victim impact statement at this time. If any such requests are received, the government will submit them to the Court for review.

## IV. CONCLUSION

WHEREFORE, for all of the reasons set forth herein, the government recommends that the Court sentence the defendant to a term of imprisonment of 15 years (180 months), to be followed by 20 years (240 months) of supervised release, with the recommended conditions of supervision. The defendant is further required by statute to register as a sex offender for a minimum period of 25 years.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY

___/s/_____
Lindsay Jill Suttenberg, D.C. Bar 978513
Zia Faruqui, D.C. Bar 494990
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7017; Lindsay.Suttenberg@usdoj.gov
(202) 252-7117; Zia.Faruqui@usdoj.gov